Pierre J. B. Fontenet *v.* Louis Debaillon, Adm'r. &c.

Where by the terms of sale of the property of an insolvent succession, fixed by the creditors, the property was to be sold on a credit—the "purchasers giving their obligation, with *two approved securities*, each," &c.—it was the duty of the Administrator himself to require two good sureties, and the responsibility is his, if it was not done.

Where by the terms of such a sale, the price of the property sold was to bear ten per cent interest until paid, the Administrator is chargeable with the interest until the principal is paid ; and it is no defence for him that he paid some of the claims against the estate before the expiration of the credit term.

*By the Court:* It is urged that the plaintiff has lost the benefit of his judicial mortgage by his failure to re-inscribe his judgment within ten years. It is far from clear that this principle is applicable to mortgages which an administrator is bound to raise for the purpose of selling the property and settling the debts of the succession. But even if it is, the plaintiff obtained a judgment that his claim should be paid with the benefit of his judicial mortgage. Besides it was the duty of the administrator to have paid the plaintiff, as a creditor with a judicial mortgage in 1841, and he cannot take advantage of any thing which has occurred from his constant resistance of payment until now, ten years afterwards. We consider, therefore, that the plaintiff has not lost the benefit of his judicial mortgage.

APPEAL from the District Court, Parish of St. Landry, *Overton, J. Lataste,* for plaintiff. *King,* for Administrator. *Linton,* for the Heirs.

Preston, J.[*] A judgment was obtained for the plaintiff, *Fontenet* against *Jean M. Debaillon,* for thirteen hundred and seventy-four dollars seventy-three cents, with interest at the rate of ten per cent. per annum from the 18th of June, 1837. It was recorded in the mortgage office on the 11th day of June, 1838, for the purpose of creating a judicial mortgage against *Debaillon's* property.

*Debaillon* died in the parish of St. Landry on the 30th of October, 1838, leaving property appraised in the inventories at upwards of thirty thousand dollars. His children, however, had a claim against him of about twenty thousand dollars on account of the paraphernal property of their deceased mother. They renounced the succession of their father, and it was administered as an insolvent estate.

A meeting of the creditors having been convened, it was determined and decreed that the property should be sold, " one-half the purchase money to be paid in one year and one-half in two years, *with interest from the date of sale,* at the rate of ten per cent. per annum, the purchasers of real estate and slaves giving their obligations, *with two approved securities,* each, and the property remaining mortgaged to the estate, until final payment, and the purchasers of movables giving approved personal security, these being the terms and conditions decided on by a majority of the creditors of said estate, and by the family council of the minor heirs."

The sale took place on the 2d of April, 1839, and the following days, and produced with other sales made in 1840, 1843 and 1846, the sum of $32,658. If interest at ten per cent. during the two years of credit is added, according to the conditions of the sale and also some small collections of notes and accounts due the deceased, the mass of the estate would amount to $38,000, for which the administrator is bound to account.

On the 2d day of April, 1839, the defendant, a son of the deceased, was ap-

---

[*] This judgment was pronounced in 1851, and that on the re-hearing in 1852.

pointed Administrator, and took charge of the estate. In 1843 he presented to the Probate Court a tableau of the debts of the succession, for classification. He did not place upon it the judgment in favor of the plaintiff against the deceased, and the latter filed an opposition to the tableau. It was not tried until in November, 1849, when the District Court, to which the case had been transferred, rendered a judgment that *Pierre J. B. Fontenet* "should be placed on the tableau of classification of the creditors of the estate as a judicial mortgagee creditor for the sum of $1,374 73, with yearly interest thereon at the rate of ten per cent. per annum from the 18th day of June, 1837, until paid, with privilege upon the proceeds of the immovable property of the estate from the 11th day of June, 1838—the date of registering the judgment; and the ad-ministrator was ordered to pay the claim in conformity with the judgment." The administrator failed to do so, and the plaintiff took steps to compel him to render a further, full and final account of his administration.

After much delay he rendered the account on the 30th of January, 1851, but by it showed that he had no funds to pay the plaintiff's judgment, nor assets sufficient to pay the privileges and mortgages anterior to the mortgage of the plaintiff.

The plaintiff filed an opposition to the account on many grounds, which have given rise to our present investigations. It has been seen, however, that the administrator is apparently bound to account for $38,000. Now, the expenses and debts, including a very large mortgage to the Union Bank of Louisiana, which he has paid, amount, by his account, to but $13,144. The balance of the estate must first be appropriated to pay the tacit mortgage against the estate in favor of the children of the deceased, as heirs of their mother.

The claims of those heirs amounted to about $20,000 ; and even if we should allow two years interest, at five per cent., while the notes given for the proceeds of the sale of the estate were maturing, the aggregate would be but $22,000. The claim for interest, from the death of their mother until the sale, is untenable, as no doubt during that period they were supported by their father, or out of the estate—most of them being minors.

The $22,000 and $13,144 paid by the administrator deducted from $38,000, the supposed mass of the estate, would still leave $2,856 to be appropriated to the payment of plaintiff's debt and interest, which is more than sufficient to extinguish both. The case resolves itself, therefore, into the consideration of the excuses offered by the administrator for not having in hand the means of paying the plaintiff, or rather his argument to show that he is not accountable for so large a sum as thirty-eight thousand dollars.

It appears that the administrator did not take the security required by the conditions of the sale from *Gervais Fontenet* and some others, for property of the succession sold to them, and that losses exceeding five thousand dollars have occurred from that cause. The administrator claims exemption from liability for these losses on two grounds: first, that he entrusted the Probate Judge to take the bonds, as was the custom of the times, which was neglected; and next, that the father of *Fontenet*, then solvent, was offered and accepted as his security; that immediately afterwards he became insolvent, and the loss would have occurred even if he had signed the bonds. Neither excuse is tenable. It was the duty of the administrator himself to require *two good securities*, and the responsibility was his if it was not done. And if he had seen that the security was duly taken it would have been an inducement to the *Fon-*

*tenets*, father and son, to have struggled more zealously for the reciprocal benefit of each other, to have avoided the loss. It is evident that the administrator did not subsequently exercise that care and rigor on the subject which became his office. He might have re-sold the property at the risk of *Fontenet*, and thus have prevented the loss. When the first term of payment became due he should have caused the property to have been seized and sold under the special mortgage, and the neglect to do so was utterly inexcusable. He did not do so even when the second term of payment became due, but waited until more than a year afterwards, when the property was sold at twelve months credit for not as many hundreds as thousands were bid at the probate sale.

We are bound to presume that a rigid requisition of the security required by the creditors would have prevented this extraordinary loss ; and perhaps even a prompt re-sale of the property for non-compliance with the conditions of the first sale, or the enforcement of payment by the seizure and sale of the property when the first instalment became due, would have prevented the loss.

We are, therefore, bound to conclude that the District Court has justly charged the administrator with the losses which have thus occurred.

He contends next, that the ten per cent. interest should not be added to the amount of the sales of the estate from its date until the terms of payment expired, according to the conditions of the sale, because he alleges, and indeed proves, that he paid some claims against the estate before the expiration of those terms. But this should not deprive the succession of the benefit of that interest, because the creditors and heirs, having fixed the terms and conditions of the sale, were bound to wait for payment until the expiration of the terms. Under the arrangement the interest was as much a part of the price due to the mass of the estate as the principal, and the plaintiff who is the last mortgagee creditor, has a right to insist on the administrator being charged with it. If he has really suffered any loss by anticipating payments, he has still on hand upwards of two hundred shares of the capital stock of the Union Bank, with which to indemnify himself; and it may be remarked that the principal interest stopped by anticipated payments was that accruing to the Union Bank, and moreover that the stock should have been sold and the proceeds applied to the debt of the Bank, thus leaving a larger surplus of the proceeds of the property mortgaged to the Bank for the subsequent mortgage.

It is possible a small amount should be deducted from $38,000 for interest on account of the funeral expenses and law charges paid by the administrator before the proceeds of the sales were realized. The sum would be too inconsiderable to change the result, especially as there are other claims which the administrator did not pay until long after those proceeds were realized.

It is said the Court committed a great error in charging the administrator with interest from the day of sale on a sum of upwards of six thousand dollars given for cattle, which were deliverable only in the summer after the sale, and the interest to commence on the price after the delivery. The sale took place in April, 1839. The cattle were deliverable during the summer following, and on the supposition that the terms of payment were to commence from the day of sale, and not of the delivery, interest should not have been charged for the few intervening months between the sale and delivery ; but this again would make no difference in the result as to the plaintiff, a sufficiency remaining to pay his claim after making a reasonable deduction from the $38,000 on account of this interest.

It is urged that the plaintiff has lost the benefit of his judicial mortgage by his failure to re-inscribe his judgment within ten years. It is far from being clear that this principle is applicable to mortgages which an administrator is bound to raise for the purpose of selling the property and settling the debts of a succession. But even if it is, the plaintiff obtained a judgment that his claim should be paid with the benefit of his judicial mortgage. It was not appealed from by the administrator or any creditor, and remains in full force. Besides, it was the duty of the administrator to have paid the plaintiff as a creditor with a judicial mortgage in 1841, or certainly with the proceeds of the sales of 1846, and he cannot take advantage of any thing which has occurred from his constant resistance of payment until now—ten years afterwards.

We consider, therefore, that the plaintiff has not lost the benefit of his judicial mortgage, and is entitled to be paid next to the privileges and anterior mortgages out of all the proceeds of the real property. There were no mortgages anterior to his but those of the heirs of *Mrs. Debaillon* and the Union Bank. Their claims, with all the privileges, added to the claim of the plaintiff, do not exceed the $38,000, for which the administrator ought clearly to have accounted on the 13th of June, 1846, and paid over to plaintiff his claim. Even if by our errors in calculation there may have been a balance against the estate instead of being in its favor, we are sure the administrator may fully indemnify himself by the sale of the Union Bank stock still in his hands.

An appeal has been taken by the heirs of *Mrs. Debaillon.* The evidence does not satisfy us that their claim against their father's succession exceeded $20,000; and on this supposition the administrator must, for the reasons given, account for a sum sufficient to pay them without curtailing the claim of the plaintiff.

The judgment of the District Court is therefore affirmed, with costs.

A re-hearing was applied for and granted.

By THE COURT:—This cause being considered on a re-hearing, it is ordered that the judgment heretofore rendered by this Court be re-affirmed.